**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **NELSON A. TAYLOR CO., INC.** and **TAYLOR MADE SYSTEMS BRADENTON INC.**, ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 2:03-0263-CWH |
| vs. ) ) | |
| **AMERITEX TECHNOLOGIES, INC.** and **DONALD A. ZIRKELBACH**, ) ) ) | |
| ) | ORDER |
| Defendants. ) ) ) | |

This dispute arises out of the defendants alleged infringement of four patents owned by the plaintiffs: Patents 4,750,449 (449) and 4,815,410 (410) and Patents 4,993,351 (351) and 5,189,980 (980). The plaintiffs are Nelson A. Taylor Co., Inc. and Taylor Made Systems Bradenton, Inc. (collectively referred to as "Taylor").

Patent 449 claims a mounting member that allows for the securement of a curved boat windshield to a relatively flat boat deck with little or no separation between the mounting member and the boat deck. Patent 410 is a divisional patent of patent 449 and claims the mounting member from a perspective below the member.[1]

Patent 351 claims a header that attaches to the top of a boat windshield and provides for the securement of a canopy. Patent 980 is a divisional patent of patent 351, and it claims fasteners that attach to the header.

Defendant Ameritex Technologies ("Ameritex"), created by defendant Donald

---

[1] A divisional patent is one that is filed to prosecute additional claims and uses the same specification as an earlier patent.

Zirkelbach (the defendants are collectively referred to as "Ameritex") a former employee of Taylor and patentee of patents 351 and 980, began making and selling both mounting members and headers which perform similar functions as the products claimed in the patents owned by Taylor. Ameritex argues that the patents do not exclude its products.

A patent confers the right to exclude others from making, using, or selling the invention that is patented. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The property right conferred by a patent is measured by the claims found in the patent document. Consequently, before deciding the infringement issue, the Court must construe the "metes and bounds" of the patent's claims as a matter of law. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1996). On March 14, 2006, the Court heard the parties' arguments regarding the proper scope of the disputed claim terms found in the four patents. This matter is now ready for disposition.

A patent must contain "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. "[A] claim defines the invention to which a patentee is entitled the right to exclude." Phillips, 415 F.3d at 1312. Consequently, "it is unjust to the public as well as an evasion of the law" to construe a claim in a manner different from the ordinary and customary meaning of the claim terms. Id.

The ordinary and customary meaning of a claim term is the meaning a person of ordinary skill in the art would give the claim term. Phillips, 415 F.3d at 1314. A court determines the meaning a term has to one of ordinary skill in the art by analyzing the context in which the disputed term is used throughout the entire patent document. Id. It is improper to construe a

term beyond the meaning revealed by the context of the claims, specification, and prosecution history simply because the definition is found in a dictionary, treatise, or other source. <u>Nystrom v. Trex Company</u>, 424 F.3d 1136, 1144 (Fed. Cir. 2005).

**I  The disputed claim terms**

 A Patents 449 and 410

> 1. Arcuate;
> 2. Opening toward;
> 3. Flat contact; and
> 4. Generally convex.

 B  Patents 351 and 980

> 1. Arms;
> 2. Rail portion;
> 3. Generally semi-circular;
> 4. Rounded; and
> 5. Means for gripping;

**II      Construction of the disputed claim terms found in patents 449 and 410**

Patents 449 and 410 claim a mounting member that secures a boat windshield and wing panels to a boat deck. The mounting member is an elongated member that extends the length of a windshield. The patents divide the mounting member into upper, intermediate, and lower portions. The upper portion is channel shaped and receives the bottom of a windshield. The intermediate portion extends down one side of the upper portion to the lower portion. The lower portion is secured to the boat deck. The space between the base of the upper portion and lower portion provides a recess to insert a trim piece. Projections located on the base of the upper portion and the outer edge of the lower portion retain the trim piece.

The mounting member claimed in patents 449 and 410 was invented to solve a problem caused by the boating industry's use of curved windshields, which consist of varying angles of

inclination relative to the boat deck. For example, the angle of inclination formed by a curved windshield and boat deck is steeper at the corners of a windshield than at the front part of the windshield. Prior mounting members had flat lower portions. Prior mounting members could accommodate the varying angles of inclination created by a curved windshield, but a gap would form between the prior mounting member's flat lower portion and the boat deck. This flat lower portion did not enable the mounting member to shift at varying angles of inclination.

Patents 449 and 410 introduced a mounting member with a curved lower portion that enables the mounting member to shift at varying angles of inclination by locating openings for screws at different locations along the curved lower portion. The lower portion is the innovative design feature of the claimed mounting member.

Ameritex has produced a mounting member that achieves the same function. The lower portion of Ameritex's mounting member also enables it to shift at varying angles of inclination, but Ameritex's lower portion consists of two flat segments instead of the continuously curved lower portion depicted in patents 449 and 410.

Ameritex contends that patents 449 and 410 do not claim a mounting member with lower portions that have flat sections and that do not open directly towards the base of the mounting member's upper portion. Ameritex also contends that its mounting member shifts on a round pivot and does not make flat contact as does the mounting member claimed in patents 449 and 410.

    A  Arcuate

With the exception of independent claim 35 in patent 449 and independent claim 1 in patent 410, the claims describe the structure of the lower portion of the mounting member as

"arcuate in cross section."[2]  A general purpose dictionary defines arcuate as "curved like a bow; arched."  Webster Comprehensive Dictionary Encyclopedic Edition, 1988, J.G. Ferguson Publishing Company, p. 76.[3]  The parties do not dispute that the claims use arcuate consistently with this meaning.  However, Ameritex argues that the specification and prosecution history require the additional limitation that the lower portion has no flat sections.  In addition, Ameritex argues that the Court must construe arcuate to include this limitation to avoid reading on prior art.

      1  Imposing limitations from the specification into claim terms.

 Section 112 requires a patent to contain a specification which describes the claimed invention in "full, clear, concise, and exact terms."  35 U.S.C. § 112.  Therefore, words of the claims must be based on the context revealed in the specification.  Phillips, 415 F.3d at 1315.  The specification limits a claim term when it uses the term in a manner inconsistent with the term's ordinary meaning.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

However, a patentee is not required to describe every possible embodiment of the invention in the specification.  Phillips, 415 F.3d at 1323.  Consequently, a court must not limit a

---

[2] This construction applies to claims 1-3, 13-16, 18, 19, 22, 24, 25, 26, 31, 33, 37-41 of patent 449.

[3] The Court is not applying the shifting presumption framework set forth in Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002) and discontinued by Phillips, 415 F.3d at 1324.  The claims, specification, and prosecution history reveal that one of ordinary skill in the art would understand arcuate to describe a lower portion that is curved like a bow or is arched.  This definition does not broaden the meaning of arcuate beyond the meaning provided by the claims, specification, and prosecution history.  *See* Nystrom, 424 F.3d at 1144.  The issue presented by the parties is whether the specification and prosecution history provide the additional limitation that the lower portion has no flat sections.

claim term based on specific examples found in the specification. Id. The Court must determine if the context of the specification indicates that the patentee did not intend for arcuate to claim a lower portion with flat sections, but the Court must not limit arcuate based solely on the examples provided in the specification.

The specification refers to the lower portion of prior art as flat. 449 patent, col. 1, ll. 16-26. The specification then states that the flat lower portion would not maintain continuous flush contact with the deck when the mounting member was twisted to conform it to the curvature of the windshield. 449 patent, col. 1, ll. 31-34. In addition, twisting the member made screwing the flat lower portion onto the deck difficult. 449 patent, col. 1, ll. 37-41.

The specification subsequently states that "[i]n contrast to this system, the lower portion on the claimed invention is arcuate." 449 patent, col. 1, ll. 64-67. The arcuate lower portion enables "continuous flush contact without gaps between the mounting member and the flat deck throughout the length of the member." 449 patent, col. 2, ll. 15-20. Continuous flush contact is at "different arcuate or circumferential positions along the arcuate lower portion." 449 patent, col. 2, ll. 22-25.

The lower portion illustrated in figures 2 and 3 is labeled arcuate and concave, and the lower portion is a semi-circle. 449 patent, col. 4, ll. 18-25. However, the specification states that "[w]hile the preferred concave lower portion hereof constitutes a semi-circular section, it will be appreciated that other lower portions having non-circular arcuate cross-sections may be used." Id. Figure 4 depicts a mounting member with a lower portion that has a flat and a curved

outer section.[4]  The flat section is labeled flat and the curved outer section is labeled arcuate. 449 patent, col. 6, ll. 9-18.  The specification explains that the lower portion depicted in figure 4 can shift on its arcuate outer section to maintain continuous line contact between the deck and the mounting member.  Id.

Ameritex contends that the specification uses arcuate to distinguish the claimed lower portion from the lower portion on the prior art that had flat sections.  In addition, Ameritex argues that the description of the flat section in figure 4 demonstrates that an arcuate lower portion is void of flat sections.

The specification does not state that an arcuate lower portion cannot consist of flat sections.  Rather, the specification distinguishes an arcuate lower portion from a lower portion that is entirely flat on the basis that the arcuate lower portion enables the mounting member to shift while maintaining continuous contact with no gaps between the mounting member and the boat deck.  In addition, labeling the flat section found on figure 4 as flat emphasizes that the arcuate outer section enables the mounting member to shift. Therefore, the Court holds that the specification does not indicate that the lower portion must be void of flat sections.

2  Limiting a claim term based on the prosecution history

Ameritex also contends that the patentee disclaimed lower portions with flat sections during the prosecution of patent 449.  "[T]he prosecution history can often inform the meaning of claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower

---

[4]  Figure 4 is used for mounting wing panels to a boat deck.  Wing panels have steeper angles of inclination than windshields.  449 patent, col. 5, ll. 64-68 and col. 6, ll. 1-2.

than it would otherwise be." Phillips, 415 F.3d at 1317.

Independent claim 35 of patent 449 uses the phrase "shaped cross section" to describe the lower portion. The content found in claim 35 was originally set forth in claims 48 and 49. Examiner action dated January 21, 1988, ¶ 4. Claim 48 described the lower portion as "shaped and engageable with the boat deck at different angular locations." Application dated May 27, 1987, p. 15. The examiner rejected independent claim 48 because a prior mounting member, the Loxcreen 5923, had a shaped lower portion, and this mounting member could engage the boat deck at different angular locations.[5] Examiner action dated January 21, 1988, ¶ 4. To overcome this objection, the patentee added the limitations found in claim 49 to claim 48. Amendment dated January 26, 1988, p. 1-2.

Ameritex argues that the additional limitations found in claim 49 indicate that the patentee disclaimed lower portions with flat sections. Dependent claim 49 provided the additional limitations that: (1) the lower portion has openings spaced one from the other along the lower portion at different locations in accordance with the angle between the windshield and boat deck, (2) a plurality of fasteners extends through these openings, and (3) the lower portion maintains continuous flat contact with the boat deck at various locations along the member depending on said angle. Application dated May 27, 1987, p. 15. With these additions, the examiner approved the claim. The patentee renumbered combined claims 48 and 49 to independent claim 35.

Nothing in the prosecution history indicates that the examiner required these limitations

---

[5] Dependent claims 49 and 50 were rejected because they were dependent on rejected claim 48.

because only a lower portion with no flat sections could achieve them. Rather, the additional limitations distinguish the claimed mounting member on the basis of its ability to shift and maintain continuous contact with the boat deck, which eliminates the gaps caused by the Loxcreen's flat lower portion.

### 3  Limiting a claim term based on prior art

Ameritex argues that the Court must construct arcuate to claim a mounting member with a lower portion having no flat sections to avoid reading on prior art. If after applying all of the available tools of claim construction, the claim is still ambiguous, a court should choose the meaning that does not render the patent invalid. Phillips, 415 F.3d at 1327. When invoking this maxim, courts determine "whether it is reasonable to infer that the patent examiner would not have issued an invalid patent, and that the ambiguity in the claim language should be resolved in a manner that would preserve the patent's validity." Id.

However, this maxim does not allow a court to construe a claim differently from its plain meaning to preserve the claim's validity. Phillips, 415 F.3d at 1327. As explained above, the claims and specification provide the meaning for arcuate. Consequently, resort to this doctrine is unnecessary and improper. Id. at 1328. In addition, construing arcuate without imposing a limitation that the lower portion has no flat sections does not read on prior art. The mounting member's ability to shift at varying angles of inclination while its lower portion maintains continuous contact with no gaps between the lower portion and the boat deck sets the invention apart from the prior art.

The Court holds that the sum of the evidence does not reveal a limitation that arcuate claims a lower portion with no flat sections. Consequently, the Court construes a lower portion

that is "arcuate in cross section" to mean a lower portion that is curved like a bow or arched.

B  Flat contact

Ameritex argues that flat contact, which is used in independent claims 31 and 35, requires unbroken contact between a flat surface of the mounting member and the flat boat deck.[6] Dependent claim 19 in patent 449 and dependent claim 2 in patent 410 describe the contact between the lower portion and the boat deck as continuous flat contact. Independent claims 31 and 35 describe this contact as substantially continuous flat contact. Independent claims 26 and 41 describe this contact as substantially continuous contact.

Independent claims 26 and 41 leave out the term flat from the description of the type of contact made between the lower portion and the deck, but the context of the claims do not indicate a difference between flat contact and continuous contact.

The specification states that the lower portions of the prior art did not allow the mounting member to maintain "flush continuous contact" with the boat deck (449 patent, col. 1, ll. 33-35) and that the present invention allows the mounting member to maintain "continuous flush contact without gaps between the mounting member and boat deck throughout the length of the member." (449 patent, col. 2, ll. 15-17).  In the next sentence, the specification rephrases flush contact as an "edge or line contact."  449 patent, col. 2, ll. 20-23.

In the description of figures 2 and 3, the specification refers to the contact made by the circular lower portion and boat deck as "line contact" and states that the arcuately spaced openings allow the mounting member to remain flush with the deck without any gaps.  449

---

[6] Ameritex's mounting member shifts on round pivots.  The mounting member is not secured through the flat sections on the lower portion.

patent, col. 4, ll. 39-40 and col. 5, ll.39-47.

The extrusion illustrated in figure 4 has a lower portion consisting of a flat section and an arcuate outer section. When describing the contact between the flat section of the lower portion and the boat deck, the specification, uses the term "flush contact." 449 patent, col. 6, ll. 13-14. When describing the contact between the arcuate outer section and the boat deck, the specification uses the term "continuous line contact." 449 patent, col. 6., ll. 16-18. Finally, when summarizing the description and drawings, the specification states that the "present invention provides methods for mounting a curved windshield to a flat boat deck wherein flush contact between the mounting member and the deck is provided." 449 patent, col. 6., ll. 23-25.

In the prosecution history, the examiner rejected independent claim 48 as reading on Loxcreen 5923. Examiner action dated January 21, 1988, ¶ 4. The revised claim 48 included the limitation, among others, that the lower portion maintained "continuous flat contact" throughout the length of the member. Amendment dated January 26, 1988, p. 2. However, this amendment does not indicate that flat contact provides a limitation in addition to the flush, edged, line, or continuous contact described in the other claims and in the specification.

"The claim construction that stays true to the claim language and most naturally aligns with the patents description of the invention will be, in the end, the correct construction." Nystrom, 424 F.3d at 1142. Flat contact is not distinguished by the claims, is not mentioned by the specification, and is not referenced in the prosecution history. Consequently, the best construction to give the phrase is the meaning given to the only contact described in the patent document, which is contact without gaps and no requirement that the contact is between two flat surfaces as is suggested by Ameritex.

C  Opening toward

The claims in patent 449 also require that the arcuate lower portion "opening toward the channel-shaped upper portion." The ordinary meaning of toward is "in the direction of." Webster's Third New International Dictionary of the English Language Unabridged, p. 2417 (Merriam-Webster Inc., 1986). Ameritex argues that opening toward requires the lower portion to open so that the center point of the lower portion is in a direct line with the center of the base of the upper portion.

First, the claims do not indicate a meaning different from the ordinary meaning of opening toward. Second, the preferred embodiment illustrated by figures 2 and 3 depicts a lower portion that lies along the circumference of a circle and that has a center point. 449 patent, col. 4, ll. 30-33. The angle formed by the mounting member is measured by the location of the center point. 449 patent, figures 2 and 3. The location of the center point determines which arcuately spaced opening is used to secure the lower portion to the deck. 449 patent, col. 4, ll. 65-68 and col. 5, ll. 1-16. However, figures 2 and 3 are preferred embodiments. The specification states that non-circular lower portions may be used. A non-circular lower portion does not have a center point. Moreover, the specification never refers to a requirement that the center point of the lower portion must be in a straight line with the center point of the base of the upper portion for the mounting system to function.

The prosecution history does not reveal any additional limitations placed on this claim term. Consequently, the phrase opening toward the channel shaped upper portion is provided its ordinary meaning of opening in the direction of the upper portion.

D  Generally convex

Taylor contends that generally convex claims a lower portion that bulges outward. Divisional patent 410 describes the mounting member from a perspective below the mounting member. Independent claim 1 of patent 410 describes the lower portion as "having a generally convex outer surface . . . and facing in a direction away from said upper portion." The specification in patent 410 is identical to the specification in patent 449.

Convex is defined as "[h]aving a surface or boundary that curves or bulges outward, as the exterior of a sphere." The American Heritage Illustrated Encyclopedic Dictionary, 1987, Houghton Mifflin Company, p. 383. Similarly, another general purpose dictionary defines convex as "curving outward like a segment of a globe or of a circle viewed from the outside; bulging out: opposed to concave." Webster Comprehensive Dictionary Encyclopedic Edition, 1988, J.G. Ferguson Publishing Company, p. 285.

The specification does not use the term generally convex to describe the lower portion. However, the specification uses the term concave to describe the lower portion. 449 patent, col. 4, ll. 19-30. Based on the meaning of convex and on the absence of convex in the specification, the Court holds that one of ordinary skill in the art would believe that concave and convex describe the same structure but from a different perspective and that the same limitations apply to each term.

Independent claims 15, 26, 33, 37 and 38 of patent 449 state that the arcuate lower portion is "generally concave in cross section," the arcuate lower portion "forms a generally concave section," and that the "arcuate cross section is generally concave in cross section." These claims reveal that the meaning of generally concave and thus generally convex must lie within the meaning of arcuate. The ordinary meaning of arcuate is curved like a bow or arched.

Taylor's proposed construction of convex as bulging outward is broader than curved like a bow or arched.

The correct construction of generally convex is consistent with the dictionary meaning of convex, which is curved outward like the exterior of a sphere. This construction of convex is within the meaning of arcuate. Consequently, the Court holds that the correct construction of generally convex is a shape that curves outward similar to the exterior of a sphere.[7]

Ameritex argues that, like arcuate, generally convex must not be construed to include a structure with flat sections. However, as explained above, neither the claims nor the specification reveal a requirement that the claimed lower portion is void of flat sections, and the prosecution history does not reveal a disclaimer of lower portions with flat sections to avoid reading on prior art.

**III     The disputed language in patents 351 and 980**

Patents 351 and 980 claim a header which attaches to the top of a boat windshield and provides for the securement of a canopy. The canopy extends over the cockpit of the boat. The bottom of the header consists of two parallel arms that create a channel between them. The upper extremity of the windshield is placed in this channel. The top of the header is a curved portion, and the canopy attaches to a fastener placed on the header. The canopy extends over the top curved portion.

Ameritex has developed headers that: (1) have top portions with flat surfaces, (2) have

---

[7] The modifier "generally" allows for slight deviations from mathematical boundaries. <u>Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298, 1310-1311 (Fed. Cir. 2003). Consequently, the Court construes generally convex to claim a lower portion that is similar to the exterior of a sphere.

flat rail portions, and (3) use a vinyl gasket in the channel created by two arms to receive the upper extremity of the windshield. Ameritex contends that patents 351 and 980 do not claim headers with these features.

### A  Arms

The parties agree that the arms of the header are generally parallel and form a channel for engaging the upper extremity of a boat windshield between the arms. The parties also agree that the arms have means along them for gripping the windshield. However, Ameritex contends that the meaning of arms must also include a requirement that a rail portion extends across the channel created by the arms.

The claims separately describe the limitations for the arms and the rail portion. The description of the arms does not include the required placement of the rail portion. One skilled in the art would determine the location of the rail portion by looking to the description of the rail portion and not the arms. Consequently, the Court finds that arms are structures that are generally parallel, form a channel between them for receiving the upper extremity of a boat windshield, and have means along the channel for gripping the windshield. The required placement of the rail portion is not included in the description of the arms.

### B  Rail portion

Independent claims 1 and 4 of patent 351 and independent claims 1, 5, and 6 of patent 980 claim the structure of the rail portion as generally semi-circular. Independent claim 5 of patent 351 claims the structure of the rail portion as rounded. The parties agree that the term rail portion means the portion extending across the channel formed by the two arms.

Ameritex argues that the patents do not require that the rail portion is the top portion of

the header. The specification describes the rail portion as "a semi-circular rounded rail portion extending between the two sides, and which is slightly offset outwardly with respect to each side." 351 patent, col. 2, ll. 40-44. If the rail portion were not the top of the header it could not offset outwardly from the two sides of the header.

In addition, figure 1 is a cross sectional illustration of the header. The top of the header is labeled 20. The specification does not identify the structure designated 20 in figure 1, but 20 is semi-circular and offsets outwardly from the sides of the header, which corresponds to the specification's description of the rail portion. Therefore, the Court holds that one of ordinary skill in the art would understand that 20 identifies the rail portion and that the rail portion is the top of the header.

Ameritex also argues that the rail portion is limited to a structure with no flat surfaces. Taylor contends that generally semi-circular and rounded claim a rail portion that includes flat sections. The claims do not provide a more detailed description of the shape of the rail portion other than describing it as rounded and generally semi-circular. The specification states that the header has a curved upper surface with means for supporting a boat canopy. 351 patent, col. 2, ll. 40-41. The rail portion labeled 20 and found on figure 1 appears semi-circular and has a curved upper surface.

The term generally allows for a slight deviation from the mathematical boundaries presented by the term circular. Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1310-1311 (Fed. Cir. 2003). The claims and specification indicate that generally semi-circular and rounded are used to claim a rail portion that is a semi-circle or that is similar to a semi-circle. The specification requires a rail portion with a curved upper surface.

Consequently, generally semi-circular and rounded do not claim a rail portion that has a top surface that is entirely flat, but neither the claims nor the specification provide additional limitations.

Ameritex submits several headers that existed prior to the filing of patent 351. This prior art has top portions with a flat top and bottom surface. Ameritex contends that the Court must impose limitations on the rail portion claimed in patents 351 and 980 that will avoid reading on this prior art. However, the Court may only alter the ordinary meaning of a claim term to avoid anticipation when it can reasonably infer that the examiner would not have issued an invalid patent. Phillips, 415 F.3d at 1327. Ameritex has not offered any evidence relating to the prosecution of the 351 patent and fails to demonstrate that the examiner even considered this issue during the patent's prosecution.[8] Consequently, the Court denies Ameritex's request that it impose a limitation that patents 351 and 980 claim only rail portions completely void of flat sections.

C   Means for gripping

Independent claims 1 and 4 in patent 351 and independent claims 1, 5, and 6 in patent 980 state that each arm has "the means along the channel for gripping the windshield." These claims do not provide the structure which grip the windshield, and consequently, the Court must construe the term using "means plus framework." Phillips, 415 F.3d at 1311. "An element in a

---

[8] The Court notes that the parties provided documents regarding the prosecution of divisional patent 980, which was filed after patent 351. This prosecution history indicates that the patentee used the terms generally semi-circular and rounded to avoid reading on prior art that had flat or D-shaped top portions. However, Ameritex did not present similar evidence concerning the prosecution of patent 351, and the Court will not use the evidence regarding the prosecution of 980 to speculate as to what took place during the prosecution of patent 351.

claim may be expressed as a means for performing a specified function without the recital of structure . . . and such claim shall be construed to cover the corresponding structure described in the specification and equivalents thereof." 35 U.S.C. § 112. The specification describes the means for gripping as serrations along the interior of the two arms. These serrations are labeled 13 and 15 in figure 1. 351 patent, col. 2 ll. 37-39.

Ameritex argues that the Court should include the limitation that a gasket placed between the arms and windshield is not claimed. However, neither the claims nor the specification disclaim the use of a liner with the header. Consequently, the Court finds that the phrase "means along the channel for gripping the windshield" are serrations along the interior surface of the arms with no additional limitation that a liner cannot be used.

**IV     Conclusion**

The Court construes the disputed terms in patents 449 and 410 as follows:

1. Arcuate:                            Curved like a bow or arched.

2. Flat contact:                       Contact between the lower portion of the mounting

                                       member and receiving surface that has no gaps.

3. Opening toward the

   channel shaped upper portion:       Opening in a direction toward the

                                       channel shaped upper portion.

4. Generally convex:                   Curving outward similar to the exterior of a sphere.

The Court construes the disputed terms in patents 351 and 980 as follows:

1. Arms:                               Structures that are generally parallel, form a

                                       channel between them for receiving the upper

|   |   |   |
|---|---|---|
|   |   | extremity of a boat windshield, and have means along the channel for gripping the windshield. |
| 2. | Rail Portion: | The top portion of the header that is either a semi-circle or similar to a semi-circle.  The top surface of the rail portion must curve. |
| 3. | Means for gripping: | Serrations along the interior surface of the arms. |

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE**

September 20, 2006
Charleston, South Carolina

Page -19-